# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| PUBLIC EMPLOYEES FOR ENVIRONMENTAL RESPONSIBILITY, 2000 P Street NW, Suite 240 Washington, D.C. 20036<br><br>    Plaintiff,<br><br>v.<br><br>UNITED STATES DEPARTMENT OF AGRICULTURE, 1400 Independence Avenue SW Washington, D.C. 20250<br><br>    Defendant. | Civil Action #  15-2023<br><br>**COMPLAINT** |

## PRELIMINARY STATEMENT

1. Plaintiff Public Employees for Environmental Responsibility ("PEER" or "Plaintiff") brings this action against the United States Department of Agriculture ("USDA" or "Defendant") for its refusal to consider Plaintiff's Petition for Rulemaking regarding serious flaws with USDA's Scientific Integrity Policy ("the Policy"), Departmental Regulation ("DR") 1074-001 (May 10, 2013), and for its failure to follow the notice-and-comment rulemaking procedures of the Administrative Procedure Act ("APA"), 5 U.S.C. § 553, in promulgating the Policy, given that it constitutes an attempt at legislative rulemaking, has a widespread public impact, and substantially affects persons outside the agency.

2. Plaintiff also brings this action challenging § 5(e)(2) of the Policy as unconstitutional, in that it infringes on the First Amendment rights of USDA scientists, among others, by

preventing them from speaking or writing publically in their capacity as citizens, not pursuant to their official duties, on matters of public concern.

3. In March 2009, the Obama administration directed executive department heads to devise new safeguards for scientific integrity within each department. Memorandum of March 9, 2009: Scientific Integrity, 74 Fed. Reg. 10,671 (Mar. 11, 2009).

4. In response, USDA created and released a Scientific Integrity Policy in 2013 as DR 1074-001.  By its own terms, the Policy applies to USDA scientists as well as to "[a]ll contractors, cooperators, partners, permit[t]ees, lessees, and grantees that assist with developing or applying the results of scientific and technical activities on behalf of USDA." DR 1074-001 at 6.

5. On March 26, 2015, PEER submitted a Petition for Rulemaking ("Petition") to USDA, pursuant to 5 U.S.C. § 553(e), urging USDA to improve the Policy, particularly its statement in § 5(e)(2) that scientists "should refrain from making statements that could be construed as being judgements or recommendations on USDA or any other federal government policy, either intentionally or inadvertently," DR 1074-001 at 4, a provision USDA managers have used to suppress valid and well-supported scientific conclusions that have the potential to draw the ire of USDA corporate stakeholders. The Petition also urged USDA to adopt best practices incorporated into the Scientific Integrity Policies of other federal agencies, including mechanisms for preventing politically motivated suppression from occurring and for challenging it once it had occurred, cogent safeguards for whistleblowers, and requirements for transparency in addressing matters of scientific integrity.

6. On June 11, 2015, USDA sent PEER a letter dismissing PEER's Petition out of hand, erroneously claiming that USDA did not have to consider the merits of PEER's Petition as the Policy related solely to agency personnel and management, 5 U.S.C. § 553(a)(2), an exception to the APA's rulemaking provisions.

7. Plaintiff now challenges USDA's refusal to address its Petition as arbitrary and capricious and an abuse of discretion within the meaning of the APA, under 5 U.S.C. §§ 701-706.

8. Accordingly, Plaintiff petitions for the Policy, DR 1074-001, to be repealed or amended in conformance with the APA's notice-and-comment rulemaking requirements detailed in 5 U.S.C. § 553.

9. Plaintiff also seeks the repeal of § 5(e)(2) of the Policy, which states that "scientists should refrain from making statements that could be construed as being judgments of or recommendations on USDA or any other federal government policy, either intentionally or inadvertently," as unconstitutional, in that it violates the First Amendment rights of USDA scientists and non-USDA scientists in their capacity as citizens speaking on matters of public concern.

## JURISDICTION AND VENUE

10. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this claim arises under the laws of the United States.

11. This Court has authority to grant declaratory relief under 28 U.S.C. § 2201, *et seq.*

12. This Court has authority to award costs and attorneys' fees under 28 U.S.C. § 2412(d).

13. Venue in this Court is proper under 28 U.S.C. § 1391(e). Plaintiff PEER and Defendant U.S. Department of Agriculture are both headquartered within the District of Columbia.

**THE PARTIES**

14. Plaintiff Public Employees for Environmental Responsibility is an IRS 501(c)(3) nonprofit organization incorporated under the laws of the District of Columbia. PEER is dedicated to research, public education, and advocacy concerning the activities and operations of the federal government. To that end, PEER serves federal employees, including scientists, charged with the protection and study of America's environment and natural resources. Safeguarding government employees' ability to uphold scientific integrity and to share important research findings with the public is germane to PEER's purpose.

15. Plaintiff is an interested party under 5 U.S.C. § 553(e), and has associational standing to sue through its members whom Defendant's decision impacts. One such member is Dr. Jonathan Lundgren, a USDA research entomologist whose supervisors cited the Policy in forbidding him to submit an article on what they considered a "sensitive topic" for publication in a non-USDA scientific journal, and who have also prohibited him from speaking publicly about certain topics that he has researched. Neither PEER's claim nor the requested relief require the participation of Dr. Lundgren.

16. Defendant United States Department of Agriculture is a department and agency of the United States, "the general design and duties of which shall be to acquire and to diffuse among the people of the United States useful information on subjects connected with agriculture, rural development, aquaculture, and human nutrition, in the most general and comprehensive sense of those terms, and to procure, propagate, and distribute among the people new and valuable seeds and plants." 7 U.S.C. § 2201.

**FACTUAL BACKGROUND**

17. USDA Agricultural Research Service ("ARS") is USDA's chief scientific in-house research agency. USDA-ARS fulfills the Secretary of Agriculture's mandate "to conduct and to stimulate research into the laws and principles underlying the basic problems of agriculture in its broadest aspects. . . ." 7 U.S.C. § 427.

18. On March 9, 2009, the White House released a Memorandum for the Heads of Executive Departments and Agencies on the subject of scientific integrity. President Obama explained, "The public must be able to trust the science and scientific process informing public policy decisions. Political officials should not suppress or alter scientific or technological findings and conclusions." Memorandum of March 9, 2009: Scientific Integrity, 74 Fed. Reg. 10,671 (Mar. 11, 2009). In accordance with this objective, President Obama directed that "Each agency should have appropriate rules and procedures to ensure the integrity of the scientific process within the agency." *Id.*

19. On May 10, 2013, USDA released its Scientific Integrity Directive, DR 1074-001, establishing USDA's Scientific Integrity Policy, superseding DR 1074-001 of August 5, 2011. The Policy, created pursuant to the Presidential Memorandum on Scientific Integrity of March 9, 2009, was enacted to "[p]romote a culture of scientific integrity. Science, and public trust in science, thrives in an environment that shields scientific data and analyses and their use in policy making from political interference or inappropriate influence. Scientific and technological findings should not be suppressed or altered." DR-1074-001 at 3.

20. Section 5(e)(2) of the Policy explains that it is meant to

> Ensure that scientists may communicate their findings without political interference or inappropriate influence, while at the same

  time complying with USDA policies and procedures for planning and conducting scientific activities, reporting scientific findings, and reviewing and releasing scientific products. Such communications include research on policy-related issues when appropriate to the role of the agency and scientist; *however, the scientists should refrain from making statements that could be construed as being judgments of or recommendations on USDA or any other federal government policy, either intentionally or inadvertently*. Communications on such matters should remain within the bounds of their scientific findings. Such scientific and technical communications for non-USDA media (e.g., manuscripts and presentations for scientific journals, workshops, conferences, and symposia) should follow agency technical review procedures and do not generally require review above the agency level.

*Id.* at 4-5 (emphasis added).

21. Ironically couched within a policy statement devised to "[p]romote a culture of scientific integrity," § 5(e)(2) can be used by USDA to suppress scientific discourse on topics that USDA management deems controversial by preventing scientists from seeking publication in peer-reviewed journals, or from providing public statements on critical issues of public concern even outside of their official capacities within USDA.  The implications of § 5(e)(2) are myriad, as the provision is written broadly enough to cover any manner of suppression of valuable scientific discourse, in direct contradiction to USDA's stated purpose. 7 U.S.C. § 2201.

22. For example, USDA leadership specifically cited § 5(e)(2) on September 15, 2014 in forbidding Dr. Lundgren, a GS-14 Research Entomologist at USDA-ARS, to submit an article to non-USDA scientific journals.  The article explored the statistical causality relationship between trends in U.S. row crop production practices and U.S. agriculture and energy policies, technology innovation in biofuel production, and genetically modified seed development.  Peer-reviewed journals are not official organs, and USDA scientists can use the agency affiliation for identification purposes only by including

disclaimers that they are not representing agency views, but their own views as citizen scientists. Government scientists are simultaneously citizens with specific areas of expertise, allowing them to make important contributions to the discussion, be it technical or otherwise, of issues of public importance.

23. On multiple occasions USDA leadership has also forbidden Dr. Lundgren from publicly speaking about agricultural issues. Dr. Lundgren detailed two of these instances in a Scientific Integrity Complaint that he submitted to the Agency on September 12, 2014. The first occurred in March 2014, when USDA management prohibited him from speaking about an agency-approved *Bioscience* article he co-authored on the risks of RNAi genetically modified crops to non-target organisms following several press interviews Dr. Lundgren in which he had discussed the article. The second occurred in Mary 2014 when they restrained Dr. Lundgren from similarly speaking about his research on the non-target effects of RNAi-based pesticides at a conference abroad.

24. On March 26, 2015, PEER submitted a Petition for Rulemaking to USDA, pursuant to 5 U.S.C. § 553(e), urging USDA to revise § 5(e)(2) so that agency management cannot rely upon it to suppress scientific discourse. This petition explained that "[i]n a growing number of cases, USDA managers are interfering, intimidating, harassing, and in some cases punishing civil service scientists for doing work that has inconvenient implications for industry and could have direct policy/regulatory ramifications."

25. PEER also petitioned USDA to adopt best practices incorporated into the Scientific Integrity Policies of other federal agencies, in accordance with the Presidential Memorandum on Scientific Integrity of March 9, 2009. Specifically, PEER asked that USDA provide a mechanism for preventing politically motivated suppression from

occurring and for challenging it once it had occurred, that USDA provide cogent safeguards for whistleblowers, and that USDA be more transparent in addressing matters of scientific integrity.

26. On June 11, 2015, USDA sent PEER a letter, explaining its refusal to consider the merits of PEER's Petition. In a brief letter comprised of only three substantive paragraphs, USDA entirely disregarded PEER's arguments, claiming that it did not have to consider them at all, citing to an exception to the requirements of the Freedom of Information Act, 5 U.S.C. § 552(b)(2), as well as to 5 U.S.C. § 553(a)(2).

## CAUSES OF ACTION

*Count I – Defendant's denial of Plaintiff's petition was arbitrary and capricious and an abuse of discretion in violation of the APA*

27. Pursuant to 5 U.S.C. § 702, Plaintiff seeks review of USDA's refusal to consider its March 26, 2015 Petition for Rulemaking in contravention of 5 U.S.C. 553(e).

28. This refusal, effectively a denial, represents the agency's final, crystallized position on the matter and constitutes a "final agency action for which there is no other adequate remedy in a court" and is therefore "subject to judicial review." 5 U.S.C. § 704.

29. Courts reviewing such actions are authorized to hold unlawful and set aside final agency actions, findings, and conclusions that are "arbitrary and capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A).

30. Defendant's effective denial of Plaintiff's Petition, wherein Defendant refused to consider the Petition on its merits, is arbitrary and capricious and an abuse of discretion, and therefore must be set aside pursuant to the APA, 5 U.S.C. § 706(2)(A).

*Count II – Section 5(e)(2) of USDA's Scientific Integrity Policy Violates the First Amendment*

31. Plaintiff seeks the repeal of § 5(e)(2) of USDA's Scientific Integrity Policy as it violates USDA scientists' First Amendment right to speak freely in their capacity as citizens on matters of public concern, and can be used to prevent agency scientists, as well as private scientists collaborating with USDA, from publically discussing vital research, and from sharing their views more generally on issues that have significant implications for American agriculture.  U.S. Const. amend. I.

*Count III – USDA failed to provide for public notice and comment on its Scientific Integrity Policy in violation of the APA*

32. USDA failed to undergo necessary notice-and-comment rulemaking, as required under 5 U.S.C. § 553, in promulgating its Scientific Integrity Policy, given that § 5(e)(2) of the Policy implicates the First Amendment rights of government and non-government scientists, and also given the Policy's widespread public impact in providing USDA managers with the ability to stymie scientific discussion and important public debate.

33. As opposed to being exempt from APA rulemaking as a matter relating to agency management and personnel, the Policy is effectively legislative, meaning that it has the force of law, as evidenced by agency management's reliance on § 5(e)(2). As such, it is not exempt from notice-and-comment rulemaking under the APA.

34. USDA's Scientific Integrity Policy, DR 1074-001, must be amended or repealed in accordance with 5 U.S.C. § 553 as it constitutes an attempt at substantive, legislative, rulemaking without required public notice and comment procedures.

**PRAYER FOR RELIEF**

Wherefore, Plaintiff respectfully requests the Court to order the following relief:

A. Declare that Defendant's final agency action in effectively denying Plaintiff's Petition is arbitrary and capricious and an abuse of discretion in violation of the APA. As such, set aside Defendant's decision denying Plaintiff's Petition.

B. Order USDA to re-promulgate its Scientific Integrity Policy with notice and comment rulemaking procedures in compliance with the APA.

C. Repeal § 5(e)(2) of the Policy as in violation of the First Amendment to the United States Constitution.

D. Award Plaintiffs their reasonable litigation expenses, including attorneys' fees, court costs and other expenses pursuant to the Equal Access to Justice Act, 29 U.S.C. § 2412, *et seq.*

E. Grant such additional relief as the Court deems just and proper.

Respectfully submitted on November 19, 2015,

　　/s/　Laura Dumais　　　　
Laura Dumais, DC Bar # 1024007
Public Employees for Environmental Responsibility
2000 P Street, NW Suite 240
Washington, D.C. 20036
(202) 265-7337

*Attorney for Plaintiff*