# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **PUBLIC EMPLOYEES FOR ENVIRONMENTAL RESPONSIBILITY**, <br><br> Plaintiff, <br><br> v. <br><br> **UNITED STATES DEPARTMENT OF AGRICULTURE**, <br><br> Defendant. | Case No. 15-cv-02023 (CRC) |

## MEMORANDUM OPINION AND ORDER

On May 10, 2013, the United States Department of Agriculture ("USDA") issued an internal regulation establishing a Scientific Integrity Policy ("SIP" or "the Policy") for the Department. The SIP directs Department scientists to limit their statements on policy-related issues to their own scientific findings and to avoid making public comments that could be construed as judgments or recommendations on federal policy itself. Plaintiff Public Employees for Environmental Responsibility ("PEER"), a nonprofit organization that advocates on behalf of government employees in the environmental field, objects to the Policy on First Amendment grounds: The Policy, it contends, prevents USDA scientists from speaking or writing publicly—even in their capacities as private citizens—on matters of public concern. PEER has not shown, however, that any of its members is likely to be affected by the Policy in the future. PEER thus lacks standing to challenge it, and the Court will dismiss PEER's complaint for lack of subject-matter jurisdiction as a result.

## I. Background

In an effort to bolster public trust in the science and scientific process informing public-policy decisions, President Obama issued a memorandum directing executive departments and agencies to take steps to promote principles of scientific integrity in their work. 74 Fed. Reg. 10,671 (Mar. 11, 2009), available at https://www.whitehouse.gov/the-press-office/memorandum-heads-executive-departments-and-agencies-3-9-09; see also id. ("Each agency should have appropriate rules and procedures to ensure the integrity of the scientific process within the agency."). As part of this effort, USDA subsequently adopted a departmental regulation establishing its own Scientific Integrity Policy and "provid[ing] instruction and guidance to Departmental leadership, employees, and contractors to ensure the highest level of integrity in all aspects of the executive branch's involvement with scientific and technological processes and analysis." Departmental Regulation 1074-001: Scientific Integrity (May 10, 2013) ("SIP") § 1, available at http://www.ocio.usda.gov/sites/default/files/docs/2012/DR%201074-001_0.pdf. At issue in this case is one specific requirement in the Policy:

> [S]cientists should refrain from making statements that could be construed as being judgments of or recommendations on USDA or any other federal government policy, either intentionally or inadvertently. Communications on such matters should remain within the bounds of their scientific findings. Such scientific and technical communications for non-USDA media . . . should follow agency level technical review procedures . . . .

Id. § 5(e)(2).

Dr. Jonathan Lundgren, a PEER member and a research entomologist formerly employed at USDA—and who is not himself a plaintiff in this case—claims that this requirement has burdened his free-speech rights in the past. Compl. ¶ 15. For instance, according to Lundgren, "USDA leadership specifically cited § 5(e)(2) on September 15, 2014 in forbidding [him] . . . to submit an article to non-USDA scientific journals." Id. ¶ 22. Agency leadership also forbade

Dr. Lundgren in March 2014 from speaking publicly about an article he had co-authored and in May 2014 from discussing his research on pesticides at an international conference. Id. ¶ 23. Dr. Lundgren resigned from his position at USDA nearly two years later and now directs a nonprofit research organization, Decl. Jonathan Lundgren ¶ 4, where he "fully intend[s] to regularly apply for USDA grants, cooperation agreements, partnerships, and/or contracts related to [his] ongoing scientific research activities," id. ¶ 6.

In response to instances like these, which it viewed as suppression of scientific discourse by agency management, PEER petitioned USDA under 5 U.S.C. § 553(e) to change the Policy and eliminate the requirement at issue. Compl. ¶ 24. PEER's petition, filed in March 2015, also asked USDA to adopt certain "best practices" included in other agencies' scientific integrity policies. Id. ¶ 25. USDA replied three months later, denying PEER's petition on the ground that the SIP involves "matters of agency management" and "personnel policy," which are exempt from the rulemaking provision of the Administrative Procedure Act ("APA"). Pl.'s Opp'n Mot. Dismiss Ex. 2 (citing 5 U.S.C. § 553(a)(2)). PEER then brought suit in this Court, contending that USDA's denial of its petition was arbitrary, capricious, and an abuse of discretion (Count One); that Subsection 5(e)(2) of the SIP violates the First Amendment of the U.S. Constitution (Count Two); and that USDA unlawfully failed to provide for public notice and comment before issuing its SIP (Count Three). USDA has moved to dismiss PEER's complaint under Federal Rule of Civil Procedure 12(b)(1) for lack of subject-matter jurisdiction and under Rule 12(b)(6) for failure to state a claim.

**II. Standard of Review**

Federal courts are courts of limited jurisdiction. On a Rule 12(b)(1) motion to dismiss, the plaintiff bears the burden of establishing jurisdiction by a preponderance of the evidence. See Lujan v. Defenders of Wildlife, 504 U.S. 555, 561 (1992). A court may examine materials

outside the pleadings as it deems appropriate in order to resolve the question of its jurisdiction. See Scolaro v. D.C. Bd. of Elections & Ethics, 104 F. Supp. 2d 18, 22 (D.D.C. 2000), aff'd, 2001 WL 135857 (D.C. Cir. Jan. 18, 2001) (citing Herbert v. Nat'l Acad. of Scis., 974 F.2d 192, 197 (D.C. Cir. 1992)).

A motion to dismiss for failure to state a claim under Rule 12(b)(6) should be granted if the allegations in a complaint do not "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). Although the Court must accept the facts pleaded as true, legal assertions devoid of factual support are not entitled to this assumption. See Kowal v. MCI Commc'ns Corp., 16 F.3d 1271, 1276 (D.C. Cir. 1994).

**III.    Analysis**

In order for the Court to have subject-matter jurisdiction over this challenge to agency action, the plaintiff must have standing to sue. Haase v. Sessions, 835 F.2d 902, 906 (D.C. Cir. 1987) ("The defect of standing is a defect in subject matter jurisdiction."). An association such as PEER has

> standing to sue on behalf of its members if: "(1) at least one of its members would have standing to sue in his own right, (2) the interests the association seeks to protect are germane to its purpose, and (3) neither the claim asserted nor the relief requested requires that an individual member of the association participate in the lawsuit."

Chamber of Commerce of U.S. v. EPA, 642 F.3d 192, 199 (D.C. Cir. 2011) (quoting Sierra Club v. EPA, 292 F.3d 895, 898 (D.C. Cir. 2002)). "When a [plaintiff] claims associational standing, it is not enough to aver that unidentified members have been injured. Rather, the [plaintiff] must specifically 'identify members who have suffered the requisite harm.'" Id. (quoting Summers v. Earth Island Inst., 555 U.S. 488, 499 (2009)). PEER claims that it "has associational standing to sue through its members whom [USDA's] decision impacts," specifically Dr. Lundgren. Compl.

4

¶ 15. Even considering the declaration of Dr. Lundgren, however, the Court finds that PEER has not shown that any of its members is likely to suffer an injury in the future as a result of USDA's Scientific Integrity Policy—and thus that any of its members would have standing to sue. And without making that showing, PEER lacks standing to seek to have the Policy set aside or to force USDA to reissue the Policy pursuant to notice-and-comment procedures. Accordingly, the Court will dismiss PEER's complaint under Rule 12(b)(1) for lack of subject-matter jurisdiction and decline to address its merits at this time.

      A.    <u>Standing</u>

Dr. Lundgren, the only PEER member identified in the complaint, is no longer employed at USDA. <u>See</u> Lundgren Decl. ¶ 4. However, he "fully intends to regularly apply for USDA grants, cooperation agreements, partnerships, and/or contracts related to his ongoing scientific research activities, and . . . already has several grants pending decision and is developing proposals for others." Pl.'s Opp'n Mot. Dismiss 4 (citing Lundgren Decl. ¶ 6). PEER contends that these facts suffice to demonstrate future injury to Dr. Lundgren because "the Policy applies to USDA contractors, cooperators, partners, permittees, lessees, and grantees," in addition to USDA employees. <u>Id.</u> According to PEER, Dr. Lundgren will be required to comply with Subsection 5(e)(2) of the SIP in his capacity as a USDA grantee and will therefore suffer an injury from its continued enforcement against him.

PEER's argument fails in two regards. First, Dr. Lundgren is not currently a recipient of any USDA grant, and his assertion that he will receive a USDA grant in the near future is only speculative. Second, even if Dr. Lundgren were to receive a USDA grant, the Court finds that he would not necessarily or even likely be bound by the terms of Subsection 5(e)(2) of the SIP. The Court will address both points in turn.

1. <u>Dr. Lundgren's Status as a Potential USDA Grantee</u>

Because Dr. Lundgren is no longer employed by USDA, the only other way he could conceivably be subject to the requirements of the Department's SIP is as a grantee or through some similar linkage to USDA. The Court understands that he "intend[s]" to apply for grants at some point in the future and that he has "several grants pending decision." Lundgren Decl. ¶ 6. And Dr. Lundgren may personally "have no reason to believe that [he] or [his] organization will not receive them." <u>Id.</u> At present, however, the Court could only speculate that Dr. Lundgren will receive a grant in the future from USDA. Furthermore, neither the Court—nor Dr. Lundgren for that matter—can currently predict what the terms of any such grant might be, including whether by its terms it would require him to comply with Subsection 5(e)(2) of the SIP.[1] Thus, although Dr. Lundgren "claims to have been harmed in the past by an agency policy," PEER has yet to "make a 'showing of [a] real or immediate threat that [he] will be wronged again' by that policy." <u>Tipograph v. U.S. Dep't of Justice</u>, No. 1:13-CV-00239 (CRC), 2015 WL 7566660, at *3 (D.D.C. Nov. 24, 2015) (first alteration in original).

---

[1] In fact, the only clue to the terms of any grant agreement USDA might make with Dr. Lundgren points in the opposite direction: USDA has identified standard terms and conditions for USDA grants, put in place after the SIP took effect. <u>See</u> Def.'s Reply 8 (citing National Institute of Food and Agriculture, U.S. Department of Agriculture, Research Terms and Conditions, Agency-Specific Terms and Conditions (Oct. 2014), <u>available at</u> https://www.nsf.gov/pubs/policydocs/rtc/agencyspecifics/nifa_1014.pdf (last visited July 15, 2016); National Institute of Food and Agriculture, U.S. Department of Agriculture, Terms and Conditions, Small Business Innovation Research Grants Program (Apr. 2015), <u>available at</u> https://nifa.usda.gov/sites/default/files/resource/SBIR2015%20APRIL%20FINAL.pdf (last visited July 15, 2016)). None of the standard terms indicates that grantees are subject to the requirements of the SIP. Relatedly, none provides any enforcement mechanism for violating the SIP.

### 2. Grantees' Obligations Under the SIP

PEER also contends that the SIP—of its own force—requires Dr. Lundgren to comply with Subsection 5(e)(2).[2] PEER's argument, however, is based on a misreading of the Policy. Subsection 5(e)(2) simply requires scientists *employed by USDA* to abide by certain restrictions in speaking on matters of federal policy; it does not, on its own, limit any speech by Department grantees who also happen to be scientists.

PEER's argument that Subsection 5(e)(2) directly imposes requirements on USDA grantees stems from two main observations about the Policy: First, the Policy states that it "applies" not just to employees, but also to "[a]ll contractors, cooperators, partners, permittees, lessees, and grantees that assist with developing or applying the results of scientific and technical activities on behalf of USDA"; second, Subsection 5(e)(2) speaks of "scientists" without qualification.

PEER is no doubt correct that the Policy has a broad scope and is intended to guide the behavior of a wide swath of USDA stakeholders. Yet that does not mean that every provision of the policy is equally applicable to those who are employed by the Department and to those who are not, or that the responsibilities of all those individuals are the same. Despite general language indicating that the SIP "applies" in some fashion to many individuals connected to but not employed by USDA, see SIP § 6(a), the background section explains with more specificity that the Policy primarily "directs [USDA] *employees*, political and career, on both the proper use of scientific findings and the principles of conducting scientific activities consistent with the Presidential Memorandum on Scientific Integrity." Id. § 2 (emphasis added). In addition, the

---

[2] This argument is premised, of course, on the assumption that Dr. Lundgren will in fact be awarded a USDA grant.

7

Policy lays out the particular responsibilities of employees at USDA as compared to those of mere contractors, cooperators, partners, permittees, lessees, or grantees: USDA employees "are responsible for . . . *complying with the policy* and any additional agency/office-specific guidance." SIP § 6(i) (emphasis added). By contrast, those other classes of individuals "are responsible for abiding by the *principles contained in th[e] policy* regarding the integrity of the Department's scientific and scholarly activities," and even then, only "as specified in written agreements or statements of work." Id. § 6(f) (emphasis added). The entire Policy thus "applies" very differently to USDA employees than to USDA contractors, cooperators, partners, permittees, lessees, and grantees.

It is also clear in context that Section 5(e) as a whole—the larger section at issue in this case—directly binds only *USDA* scientists. That conclusion follows from Section 5(e)'s repeated use of the term "USDA scientists," followed by the word "scientists" for short. For instance, the first subsection within Section 5(e) states that USDA's policy is to "[e]ncourage, but not require, *USDA scientists* to participate in communications with the media regarding their scientific findings. *Scientists* are expected to coordinate with their immediate supervisors and public affairs office in accordance with the policies of their specific agencies [within USDA]." Id. § 5(e)(1) (emphasis added). The term "USDA scientists" then makes another brief appearance, and the next subsection continues by explaining how "scientists may communicate their findings" and cautioning that "scientists should refrain from making statements that could be construed as judgments of or recommendations on USDA or any other federal government policy." Id. § 5(e)(2).

PEER reads much into the distinction between these two terms: Had USDA intended the requirement at issue to bind only *USDA* scientists, the argument goes, it would have said so explicitly. See Pl.'s Sur-reply 2. PEER emphasizes that Subsection 5(e)(1) at one point refers to

8

"USDA scientists" whereas Subsection 5(e)(2) refers only to "scientists." See id. Yet the entirety of Section 5(e) demonstrates that it uses the terms "scientists" and "USDA scientists" interchangeably. Moreover, it would be remarkable if USDA—through its internal policy—intended to bind persons outside the agency by implication and without saying so expressly. When Subsection 5(e)(2) speaks of scientists, then, it simply refers back to the term "USDA scientists" in the first sentence of the prior subsection.

Finally, as USDA observes, "[t]he policy contains no mechanism by which any of its terms could be enforced against individuals who are not employees of the agency." Def.'s Reply 1. USDA obviously has the ability to enforce the terms of the SIP against its own employees. However, if USDA meant to enforce the Policy against individuals *outside* the agency, it presumably would have included some mechanism by which it could sanction or penalize those who violate it. Perhaps unsurprisingly, there is no indication that USDA has ever attempted to enforce the overall Policy, or Subsection 5(e)(2) specifically, against non-USDA employees or that it has ever tried to penalize an individual outside the agency for violating it. These facts further support USDA's unequivocal representation that Subsection 5(e)(2) of the Policy does not bind non-USDA scientists and that it could not (and would not) act to enforce the Policy against those individuals, at least absent a separate contractual agreement specifically allowing it to do so. See id.

**IV. Conclusion**

At a minimum, what PEER must show is that at least one of its members is a USDA employee, subject to the Policy, who is suffering or will in the near future suffer some injury as a result of the Policy. Because Dr. Lundgren would not currently have standing to bring this action against USDA, PEER is left with "nothing more than sheer speculation to support the suggestion that its members will . . . face 'real and immediate threat[s]' of harm, sufficient to

9

establish the association's standing to pursue [its] claim." Munsell v. U.S. Dep't of Agric., 509 F.3d 572, 584 (D.C. Cir. 2007) (first alteration in original) (quoting City of Los Angeles v. Lyons, 461 U.S. 95, 105 (1983)).  While PEER may of course amend its complaint to allege additional facts, identify other individuals, and provide evidence in support of the standing of its members (and thus its own standing), the current complaint and corresponding affidavit are fatally lacking.  Therefore, it is hereby

**ORDERED** that [12] Defendant's motion to dismiss for lack of jurisdiction be **GRANTED**.  It is further

**ORDERED** that [1] Plaintiff's complaint be **DISMISSED,** without prejudice, pursuant to Federal Rule of Civil Procedure 12(b)(1).

**SO ORDERED**.

CHRISTOPHER R. COOPER
United States District Judge

Date:   July 15, 2016